UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEYENNE LEMKE-VEGA,<br><br>    Plaintiff,<br><br>    v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>    Defendant. | Case No. 23-cv-01408-DMR<br><br>**ORDER ON MOTION TO DISMISS AND/OR STRIKE**<br><br>Re: Dkt. No. 14 |

This is a lemon law case involving an allegedly defective 2019 Mercedes-Benz that Plaintiff Cheyenne Lemke-Vega purchased in July 2022. Lemke-Vega claims violations of state law against Defendant Mercedes-Benz USA, LLC ("MBUSA"). MBUSA now moves pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) to dismiss and/or strike portions of the complaint. [Docket No. 14.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion to dismiss is granted. The motion to strike is denied as moot.

**I.  BACKGROUND**

The complaint contains the following allegations.[1] On July 18, 2022, Lemke-Vega purchased a used 2019 Mercedes-Benz A220 ("the vehicle") from Mercedes-Benz of Walnut Creek, an MBUSA-authorized dealership and repair facility. Compl. ¶¶ 8, 17. The total sale price was $62,427.04. *Id*. at ¶ 3, Ex. A. Lemke-Vega alleges that "[e]xpress warranties accompanied the sale of the Subject Vehicle . . . by which [MBUSA] undertook to preserve or maintain the utility or performance" of the vehicle or to provide compensation in the event of "failure in such

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

1   utility or performance." Compl. ¶ 17. She alleges that the vehicle had "serious defects and

2   nonconformities to warranty and developed other serious defects and nonconformities to

3   warranty," including defects in the powertrain, engine, transmission, steering, and HVAC systems.

4   *Id*. at ¶ 18. Exhibit A to the complaint is the Retail Installment Sale Contract ("RISC") for the

5   vehicle. *Id*. at ¶ 3, Ex. A.

6       Lemke-Vega filed the complaint on March 24, 2023 alleging three claims under the Song-

7   Beverly Consumer Warranty Act, California Civil Code sections 1790 *et seq*. ("Song-Beverly

8   Act"): 1) breach of express warranty under section 1793.2(d)(2); 2) breach of implied warranty

9   under section 1792; and 3) violation of California Civil Code section 1793.2(b). MBUSA now

10  moves to dismiss the complaint and/or strike portions thereof.[2]

## II.  LEGAL STANDANDS

### A.  Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation marks omitted) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

---

[2] MBUSA asks the court to take judicial notice of five documents. Each is an opinion granting motions to dismiss or for summary judgment, and all are available on Westlaw. [Docket No. 15.] MBUSA could have cited the cases in their briefing, and the court will treat them that way. The request for judicial notice is denied as moot.

United States District Court
Northern District of California

1    Taken together, *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions, that
2 "plausibly give rise to an entitlement to relief. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173,
3 1176 (9th Cir. 2021) (quotations and internal citations omitted).

### B.     Rule 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A matter is "immaterial" when it "has no essential or important relationship to the claim for relief or the defenses being pleaded, while '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing of those issues before trial, and such a motion may be appropriate where it will streamline the ultimate resolution of the action. *Fantasy*, 984 F.2d at 1527-28. "A motion to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. 2019) (citing *Fantasy*, 984 F.2d at 1528). "Motions to strike are regarded with disfavor [ ] because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) (quotation omitted). "The grounds for a motion to strike must appear on the face of the pleading under attack," and "the Court must view the pleading under attack in the light more favorable to the pleader when ruling upon a motion to strike." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 489 (C.D. Cal. 2014) (citations omitted).

## III.    DISCUSSION[3]

### A. Motion to Dismiss

#### 1.    Breach of Express Warranty

California's Song-Beverly Act "is a remedial statute designed to protect consumers who

---

[3] MBUSA submitted a declaration by counsel in support of the motion to dismiss. [Docket No. 14-1 (Gallagher Decl. Apr. 18, 2023).] The court cannot consider it. *See Lee*, 250 F.3d at 688

3

have purchased products covered by an express warranty." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 798 (2006). The law "regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties." *Dominguez v. Am. Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 57-58 (2008) (quoting *Murillo v. Fleetwood Enters.*, 17 Cal. 4th 985, 989-90 (1998)). A buyer "who is damaged by a failure to comply with any obligation under [the Song-Beverly Act] . . . may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a).

Lemke-Vega seeks relief under the "refund or replace" provision of the Song-Beverly Act, California Civil Code section 1793.2(d)(2). Compl. 6 ¶¶ 25, 26. That provision states that "[i]f the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer" in accordance with the statute. Cal. Civ. Code § 1793.2(d)(2). The statute defines "new motor vehicle" as "a new motor vehicle that is bought or used primarily for personal, family, or household purposes," and includes "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." Cal. Civ. Code § 1793.22(e)(2). "A demonstrator is a vehicle assigned by a dealer for the purpose of demonstrating qualities and characteristics common to vehicles of the same or similar model and type." *Id.*

MBUSA moves to dismiss the breach of express warranty claim because the complaint alleges that Lemke-Vega purchased a "used" car. MBUSA argues that used cars do not fall under section 1793.22's definition of "new motor vehicle" pursuant to *Rodriguez v. FCA US, LLC*, 77 Cal. App. 5th 209, 225 (2022). Mot. 1; *see* Compl. ¶ 17 ("Plaintiff purchased a used 2019 Mercedes-Benz A220"). Lemke-Vega responds that a used car "sold with a transferrable new

---

("when the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint." (cleaned up)).

4

vehicle warranty is a 'new vehicle' for purposes of the Act," relying on *Jensen v. BMW of North America, Inc.*, 35 Cal. App. 4th 112, 123 (1995). She urges the court to decline to follow *Rodriguez.* Opp'n 5, 7.

In *Jensen*, the plaintiff leased a car from a dealership that the salesperson described as a "demonstrator." 35 Cal. App. 4th at 119. The salesperson offered her a "36,000-mile warranty on top of the [7,565] miles already on the car and gave her the warranty booklet" and "[t]he dealer wrote 'factory demo' on the credit application." In fact, the car had been previously owned. The manufacturer argued that the car was not a "new motor vehicle" under section 1793.22. *Id*. at 120, 122. The court considered the phrase "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty" and concluded that "cars sold with a balance remaining on the manufacturer's new motor vehicle warranty are included within [section 1793.22's] definition of 'new motor vehicle.'" *Id*. at 122-23. It affirmed a jury's verdict for the plaintiff for breach of the manufacturer's express written warranty. *Id*. at 119, 128, 138.

Courts have questioned *Jensen*'s seemingly broad holding about whether a used car can be a "new motor vehicle" under the Song-Beverly Act and have limited its holding to its facts. *See, e.g., Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 340, n.4 (2019) (noting "reservations" about *Jensen*'s holding; observing that language "or other motor vehicle sold with a manufacturer's new car warranty" from section 1793.22 "arguably . . . refers to cars originally sold with a new motor vehicle warranty, not subsequent sales"); *Dagher v. Ford Motor Co*., 238 Cal. App. 4th 905, 923 (2015) (limiting the application of *Jensen* to its facts). Recently, *Rodriguez* examined the statutory framework and history of the motor vehicle refund-or-replace provision in section 1793.2(d)(2) and definition of "new motor vehicle" in section 1793.22(e)(2).[4] 77 Cal. App. 5th at 217-23. The court disagreed with *Jensen*'s construction of the definition, holding that the phrase "'other motor vehicle sold with a manufacturer's new car warranty' refers

---

[4] The California Supreme Court granted review of *Rodriguez* in July 2022. 295 Cal. Rptr. 3d 351 (2022). It declined to depublish the opinion and held that the Court of Appeal's opinion could be cited "not only for its persuasive value, but also for the limited purpose of establishing the existence of a conflict in authority that would in turn allow trial courts to exercise discretion . . . to choose between sides of any such conflict." *Id*. (internal citation omitted).

to cars sold with a full warranty, not to previously sold cars accompanied by some balance of the original warranty." *Id*. at 225. It reasoned that "demonstrators and dealer-owned vehicles comprise a narrow category of basically new vehicles—they have never been previously sold to a consumer and they come with full express warranties." *Id*. at 220. Therefore, *Rodriguez* concluded, "the most natural interpretation of the phrase 'other motor vehicle sold with a manufacturer's new car warranty' is that it, too, refers to vehicles that have never been previously sold to a consumer and come with full express warranties." *Id*. "[T]he phrase functions . . . as a catchall for sales of essentially new vehicles where the applicable warranty was *issued with* the sale." *Id*. at 215 (emphasis in original). *Rodriguez* also distinguished *Jensen* on its facts, noting that "*Jensen* involved a lease *by a manufacturer-affiliated dealer* who issued a *full new car warranty* along with the lease." *Id*. at 223 (emphasis in original). "[T]he court [in *Jensen*] was not asked to decide whether a used car with an unexpired warranty sold by a third party reseller qualifies as a 'new motor vehicle.'" *Id*. at 224.

This court finds the reasoning in *Rodriguez* persuasive and adopts it here. Under *Rodriguez*, a plaintiff must allege that they purchased a vehicle which was "not previously sold to a consumer" and was sold with "full express warranties" in order to plead the purchase of a "new motor vehicle." *Id*. at 220. Here, the complaint alleges that Lemke-Vega purchased a used vehicle and that "[e]xpress warranties accompanied the sale." Compl. ¶ 17. It does not allege that the vehicle was not previously sold to a consumer. Additionally, the complaint does not include any factual allegations about the terms of the "express warranties"; Lemke-Vega suggests in her opposition that they include an "MBUSA Service Contract or Extended Warranty" contained in the RISC. *See* Opp'n 7 (citing RISC 2, § I(2)). The relevant portion of the RISC appears in a section entitled, "Optional Service Contract" with "Company MB PPM." RISC 2. The RISC does not identify MBUSA and the complaint does not allege that MBUSA issued the service contract, as opposed to "MB PPM," the entity listed on the RISC. Moreover, Lemke-Vega does not cite any authority or offer any argument that a service contract is a "full express warranty" for purposes of the relevant provisions of the Song-Beverly Act.[5] Accordingly, the court concludes

---

[5] The Song-Beverly Act defines an "express warranty" as "[a] written statement arising out of a

6

that the complaint does not adequately allege that Lemke-Vega purchased a "new motor vehicle" under section 1793.22.[6] MBUSA's motion to dismiss the first claim for breach of express warranty is granted with leave to amend.

### 2. Breach of Implied Warranty

The second claim for relief is for breach of implied warranty. MBUSA moves to dismiss this claim on the ground that as the vehicle's manufacturer, it is not liable for breach of implied warranty. Mot. 9-10. Lemke-Vega responds that MBUSA is liable because it "stepped into the role of the retailer." Opp'n 11.

The Song-Beverly Act provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. "'Consumer goods' means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1791(a). Section 1795.5 extends the Song-Beverly Act to "used consumer goods." It provides that "[i]t shall be the obligation of the distributor or retail seller making express warranties with respect to used consumer goods (and not the original manufacturer, distributor, or retail seller making express warranties with respect to such goods when new) to maintain sufficient service and repair facilities within this state to carry out the terms of such express warranties." Cal. Civ. Code § 1795.5(a). It further states that "[t]he duration of the implied warranty of merchantability and where present the implied warranty of fitness with respect to used consumer goods sold in this state, where the sale is accompanied by an express warranty, shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable . . . " Cal. Civ. Code § 1795.5(c).

---

sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." Cal. Civ. Code § 1791.2(a)(1).

[6] The facts of this case are also distinguishable from *Jensen* because the complaint does not allege that Lemke-Vega was issued a full, new car manufacturer's warranty along with the sale. *See Rodriguez*, 77 Cal. App. 5th at 223-34 (discussing *Jensen*, 35 Cal. App. 4th at 119).

7

"[O]nly distributors or sellers of *used* goods—not manufacturers of *new* goods—have implied warranty obligations in the sale of *used goods*." *Nunez v. FCA US LLC*, 61 Cal. App. 5th 385, 399 (2021). *See also Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1179 (N.D. Cal. 2017) (noting "[t]he plain language of the section clearly only creates obligations on behalf of 'the distributor or retail seller making express warranties with respect to used consumer goods (and *not the original manufacturer* . . . )" and dismissing implied warranty claim on the ground that "the Song-Beverly Act does not create any obligation on behalf of Nissan, the original car manufacturer, with respect to used goods" (emphasis in original) (quotation omitted)). Nonetheless, one court has explained that "the assumption baked into section 1795.5 is that the manufacturer and the distributor/retailer are distinct entities. Where the manufacturer sells directly to the public, however, it takes on the role of a retailer." *Nunez*, 61 Cal. App. 5th at 399 (quoting *Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 339 (2019)). In *Kiluk*, the manufacturer "partnered with a dealership to sell used vehicles directly to the public by offering an express warranty as part of the sales package," which the court described as "a crucial incentive for buyers." 43 Cal. App. 5th at 340. The court held that "[b]y partnering with the dealership, Mercedes Benz stepped into the role of a retailer and was subject to the obligations of a retailer under section 1795.5." *Id*.

Here, the complaint does not allege facts to support a reasonable inference that MBUSA "stepped into the role of a retailer." Lemke-Vega alleges only that she purchased the subject vehicle and that express warranties by MBUSA accompanied the sale. Compl. ¶ 17. But the RISC is between Lemke-Vega and Mercedes Benz of Walnut Creek, not MBUSA, and the complaint alleges no facts about the terms of the express warranties that would support a finding that MBUSA was acting as a retailer in connection with the sale of the subject vehicle. *See Nunez*, 61 Cal. App. 5th at 399 ("plaintiff presented no evidence that defendant was 'a distributor or retail seller of used consumer goods' (§ 1795.5), or in any way acted as such," distinguishing *Kiluk*). Accordingly, MBUSA's motion to dismiss the breach of implied warranty claim is granted with leave to amend.

8

### 3. Violation of Section 1793.2(b)

Lemke-Vega's third claim for relief is for violation of California Civil Code section 1793.2(b). That statute provides that manufacturers of consumer goods sold in California and for which the manufacturer has made an express warranty shall "service[ ] or repair[ ]" the consumer goods "so as to conform to the applicable warranties within 30 days." Cal. Civ. Code § 1793.2(b). MBUSA moves to dismiss this claim on the ground that the complaint "fails to allege that any individual repair attempt was not completed within thirty days or the date or visit on which this alleged violation occurred." Mot. 12. It also argues that the allegations supporting this claim are vague and conclusory. *Id*.

The Ninth Circuit has held that section 1793.2(b)'s 30-day requirement applies per repair facility visit. *Schick v. BMW of N. Am., LLC*, 801 F. App'x 519, 521 (9th Cir. 2020) ("under any reasonable reading of the statute, § 1793.2(b) requires only that BMW complete any *single* repair attempt within 30 days" (emphasis in original)). Therefore, in order to state a claim under that section, "a plaintiff must plead that a single repair attempt took the defendant more than 30 days to complete." *Herrera v. Ford Motor Co.*, No. 20-CV-00395-LHK, 2020 WL 3451328, at *4-5 (N.D. Cal. June 24, 2020) (citing *Schick*; *Ortega v. BMW of N. Am., LLC*, No. 2:18-CV-06637-R-SK, 2019 WL 9044692, at *4 (C.D. Cal. Oct. 16, 2019); and *Houston v. Country Coach, Inc.*, No. C 07-00859 HRL, 2008 WL 2783485, at *9 (N.D. Cal. July 17, 2008)).

Here, the complaint alleges only that Lemke-Vega "delivered the Subject Vehicle to [MBUSA's] authorized service representatives on multiple occasions" and that MBUSA's "authorized facilities did not conform the Subject Vehicle to warranty within 30-days and/or commence repairs within a reasonable time . . ." Compl. ¶¶ 48, 49. The complaint does not allege "that any individual repair attempt was not completed within 30 days." *See Herrera*, 2020 WL 3451328, at *4-5 (dismissing section 1793.2(b) claim for failure to allege that any single repair attempt was not completed within 30 days). Accordingly, the complaint fails to state a claim for violation of section 1793.2(b). This claim is dismissed with leave to amend.

### B. Motion to Strike

MBUSA moves to strike the complaint's references to restitution, replacement, or civil

9

1  penalties under Civil Code section 1794 in connection with Lemke-Vega's claim for violation of
2  section 1793.2(b), arguing that she is not entitled to such remedies for a violation of that statute.
3  Mot. 12-13 (requesting the court strike Compl. ¶¶ 52-56). The motion to strike is denied as moot,
4  as the court has concluded that the complaint fails to state a claim for violation of section
5  1793.2(b).

## IV. CONCLUSION

For the foregoing reasons, MBUSA's motion to dismiss is granted. The motion to strike is denied as moot. Lemke-Vega may file an amended complaint by no later than June 12, 2023. The initial case management conference is continued to July 19, 2023 at 1:30 pm. A joint CMC statement is due by July 12, 2023.

**IT IS SO ORDERED.**

Dated: May 22, 2023



_____
Donna M. Ryu
Chief Magistrate Judge