UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEYENNE LEMKE-VEGA,<br><br>  Plaintiff,<br><br>  v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>  Defendant. | Case No. 23-cv-01408-DMR<br><br>**ORDER ON MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Re: Dkt. No. 24 |

This is a lemon law case involving an allegedly defective 2019 Mercedes-Benz that Plaintiff Cheyenne Lemke-Vega purchased in July 2022. Lemke-Vega claims violations of state law against Defendant Mercedes-Benz USA, LLC ("MBUSA"). MBUSA now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the first amended complaint. [Docket No. 24.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion to dismiss is granted.

**I.  BACKGROUND**

The first amended complaint ("FAC") contains the following allegations.[1] On July 18, 2022, Lemke-Vega purchased a 2019 Mercedes-Benz A220 ("the vehicle") from Mercedes-Benz of Walnut Creek, an MBUSA-authorized dealership and repair facility. [Docket No. 20 (FAC) ¶¶ 8, 17.] The total sale price was $62,427.04. *Id*. at ¶ 3, Ex. A. Lemke-Vega alleges that "[e]xpress warranties accompanied the sale of the Subject Vehicle . . . by which [MBUSA] undertook to preserve or maintain the utility or performance" of the vehicle or to provide compensation in the event of "failure in such utility or performance." FAC ¶ 17. She further alleges that "the Subject

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

Vehicle was sold with a 4-Year and 50,000 mile Basic Warranty, which covered the vehicle parts and powertrain, a Federal Emissions Performance/Control Warranty, which ran for 8-years and 80-000 [sic] miles, and a California Emissions Control Warranty, which ran for 7-years and 70,000-miles." *Id.* at ¶ 18.

The Retail Installment Sales Contract ("sales contract") lists the vehicle as "used." FAC Ex. A (Sales Contract) at 1. Lemke-Vega alleges that "it is unknown to [her] whether the vehicle was inspected and designated as 'Certified Pre-Owned' or a Demonstrator vehicle by" MBUSA and/or its dealerships. She further alleges that "it is unknown" "whether or not the vehicle was previously sold or registered to a consumer," and that she "intends to conduct discovery on the vehicle's ownership and registration history and amend her complaint at the time of trial in order to conform to proof." FAC ¶ 19.

Lemke-Vega alleges that the vehicle had "serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty," including defects in the powertrain, engine, transmission, steering, and HVAC systems. *Id.* at ¶ 21.

Lemke-Vega filed the complaint on March 24, 2023. MBUSA moved to dismiss the complaint and/or strike portions thereof. The court granted the motion to dismiss and denied the motion to strike as moot on May 22, 2023, and granted Lemke-Vega leave to amend. *Lemke-Vega v. Mercedes-Benz USA, LLC*, No. 23-CV-01408-DMR, 2023 WL 3604318 (N.D. Cal. May 22, 2023). Lemke-Vega timely filed the FAC, alleging four claims for relief: 1) breach of express warranty under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), California Civil Code section 1793.2(d)(2); 2) breach of implied warrant under the Song-Beverly Act, California Civil Code section 1792; 3) breach of express warranty under California Commercial Code section 2313; and 4) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310. MBUSA now moves to dismiss the complaint.[2]

---

[2] MBUSA asks the court to take judicial notice of five documents. Each is an opinion granting motions to dismiss, to compel arbitration, or for summary judgment, and all are available on Westlaw. [Docket No. 25.] MBUSA could have cited the cases in their briefing, and the court will treat them that way. The request for judicial notice is denied as moot.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation marks omitted) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

## III. DISCUSSION

### A. Song-Beverly Act Claims

#### 1. Breach of Express Warranty

California's Song-Beverly Act "is a remedial statute designed to protect consumers who have purchased products covered by an express warranty." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 798 (2006). The law "regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties." *Dominguez v. Am. Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 57-58 (2008) (quoting *Murillo v. Fleetwood Enters.*, 17 Cal. 4th 985, 989-90 (1998)). A buyer "who is damaged by a failure to comply with any obligation under [the Song-Beverly Act] . . . may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a).

Lemke-Vega seeks relief under the "refund or replace" provision of the Song-Beverly Act,

3

California Civil Code section 1793.2(d)(2). FAC 6, ¶¶ 25, 26. That provision states that "[i]f the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer" in accordance with the statute. Cal. Civ. Code § 1793.2(d)(2). The statute defines "new motor vehicle" as "a new motor vehicle that is bought or used primarily for personal, family, or household purposes," and includes "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." Cal. Civ. Code § 1793.22(e)(2). "A demonstrator is a vehicle assigned by a dealer for the purpose of demonstrating qualities and characteristics common to vehicles of the same or similar model and type." *Id*.

MBUSA moves to dismiss the breach of express warranty claim, arguing that Lemke-Vega admits that she purchased a "used" car. MBUSA argues that used cars do not fall under section 1793.22's definition of "new motor vehicle" pursuant to *Rodriguez v. FCA US, LLC*, 77 Cal. App. 5th 209, 225 (2022). Mot. 1-3; *see* FAC ¶ 19 ("the Subject Vehicle is listed as 'USED'" in the sales contract). Lemke-Vega responds that a used car "sold with a transferrable new vehicle warranty is a 'new vehicle' for purposes of the Act," relying on *Jensen v. BMW of North America, Inc.*, 35 Cal. App. 4th 112, 123 (1995). Opp'n 5. She argues that "[e]ven under *Rodriguez*, used cars purchased from manufacturer-affiliated retail sellers can be subject to the [Song-Beverly] Act's provisions where the manufacturer issues a new warranty with the sale of a used vehicle." *Id*. at 8.

In *Jensen*, the plaintiff leased a car from a dealership that the salesperson described as a "demonstrator." 35 Cal. App. 4th at 119. The salesperson offered her a "36,000-mile warranty on top of the [7,565] miles already on the car and gave her the warranty booklet" and "[t]he dealer wrote 'factory demo' on the credit application." In fact, the car had been previously owned. The manufacturer argued that the car was not a "new motor vehicle" under section 1793.22. *Id*. at 120, 122. The court considered the phrase "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty" and concluded that "cars sold with a balance

4

remaining on the manufacturer's new motor vehicle warranty are included within [section 1793.22's] definition of 'new motor vehicle.'" *Id*. at 122-23. It affirmed a jury's verdict for the plaintiff for breach of the manufacturer's express written warranty. *Id*. at 119, 128, 138.

Courts have questioned *Jensen*'s seemingly broad holding about whether a used car can be a "new motor vehicle" under the Song-Beverly Act and have limited its holding to its facts. *See, e.g., Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 340, n.4 (2019) (noting "reservations" about *Jensen*'s holding; observing that language "or other motor vehicle sold with a manufacturer's new car warranty" from section 1793.22 "arguably . . . refers to cars originally sold with a new motor vehicle warranty, not subsequent sales"); *Dagher v. Ford Motor Co*., 238 Cal. App. 4th 905, 923 (2015) (limiting the application of *Jensen* to its facts). Recently, *Rodriguez* examined the statutory framework and history of the motor vehicle refund-or-replace provision in section 1793.2(d)(2) and definition of "new motor vehicle" in section 1793.22(e)(2).[3] 77 Cal. App. 5th at 217-23. The court disagreed with *Jensen*'s construction of the definition, holding that the phrase "'other motor vehicle sold with a manufacturer's new car warranty' refers to cars sold with a full warranty, not to previously sold cars accompanied by some balance of the original warranty." *Id*. at 225. It reasoned that "demonstrators and dealer-owned vehicles comprise a narrow category of basically new vehicles—they have never been previously sold to a consumer and they come with full express warranties." *Id*. at 220. Therefore, *Rodriguez* concluded, "the most natural interpretation of the phrase 'other motor vehicle sold with a manufacturer's new car warranty' is that it, too, refers to vehicles that have never been previously sold to a consumer and come with full express warranties." *Id*. "[T]he phrase functions . . . as a catchall for sales of essentially new vehicles where the applicable warranty was *issued with* the sale." *Id*. at 215 (emphasis in original). *Rodriguez* also distinguished *Jensen* on its facts, noting that "*Jensen* involved a lease *by a manufacturer-affiliated dealer* who issued a *full new car*

---

[3] The California Supreme Court granted review of *Rodriguez* in July 2022. 295 Cal. Rptr. 3d 351 (2022). It declined to depublish the opinion and held that the Court of Appeal's opinion could be cited "not only for its persuasive value, but also for the limited purpose of establishing the existence of a conflict in authority that would in turn allow trial courts to exercise discretion . . . to choose between sides of any such conflict." *Id*. (internal citation omitted).

*warranty* along with the lease." *Id*. at 223 (emphasis in original). "[T]he court [in *Jensen*] was not asked to decide whether a used car with an unexpired warranty sold by a third party reseller qualifies as a 'new motor vehicle.'" *Id*. at 224.

As the court previously found in ruling on MBUSA's motion to dismiss the complaint, this court finds the reasoning in *Rodriguez* persuasive and adopts it here. *See Lemke-Vega*, 2023 WL 3604318, at *4. "Under *Rodriguez*, a plaintiff must allege that they purchased a vehicle which was 'not previously sold to a consumer' and was sold with 'full express warranties' in order to plead the purchase of a 'new motor vehicle.'" *Id*. (quoting *Rodriguez*, 77 Cal. App. 5th at 220). Here, Lemke-Vega alleges on information and belief that the vehicle "qualifies as a 'new motor vehicle' under the provisions of Cal. Civ. Code § 1793.22(e)(2)." FAC ¶ 20. However, she admits that the sales contract describes the vehicle as a used car. She also admits that she does not know whether the vehicle was "'Certified Pre-Owned' or a Demonstrator vehicle" or whether "the vehicle was previously sold or registered to a consumer" and alleges that she needs discovery "on the vehicle's ownership and registration history." *Id*. at ¶ 19. The court concludes that the FAC fails to allege any facts from which the court could draw a reasonable inference that the vehicle was "not previously sold to a consumer."

Additionally, the FAC does not allege that the vehicle was sold with "full express warranties." Lemke-Vega points to the "MBUSA Service Contract or Extended Warranty" contained in the sales contract to argue that "she purchased her vehicle with MBUSA's express warranty." *See* Opp'n 8 (citing Sales Contract at 2, § I(2)). However, the relevant portion of the service contract appears in a section entitled, "Optional Service Contract" with "Company MB PPM." Sales Contract 2. It does not identify MBUSA and the FAC does not allege that MBUSA issued the service contract, as opposed to "MB PPM," the entity listed. Moreover, Lemke-Vega does not offer any authority or argument that a service contract is a "full express warranty" for purposes of the relevant provisions of the Song-Beverly Act.[4]

---

[4] The Song-Beverly Act defines an "express warranty" as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." Cal. Civ. Code §

6

1   Accordingly, the court concludes that the FAC does not allege facts from which the court can reasonably infer that Lemke-Vega purchased a "new motor vehicle" under section 1793.22.[5] MBUSA's motion to dismiss the first claim for breach of express warranty is granted. As Lemke-Vega has already been given an opportunity to amend the complaint to state a claim for breach of express warranty but failed to do so, the dismissal is with prejudice.

### 2. Breach of Implied Warranty

The second claim for relief is for breach of implied warranty. MBUSA moves to dismiss this claim on the ground that as the vehicle's manufacturer, it is not liable for breach of implied warranty. Mot. 10-11. Lemke-Vega responds that MBUSA is liable because it "stepped into the role of the retailer." Opp'n 10.

The Song-Beverly Act provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. "'Consumer goods' means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1791(a). Section 1795.5 extends the Song-Beverly Act to "used consumer goods." It provides that "[i]t shall be the obligation of the distributor or retail seller making express warranties with respect to used consumer goods (and not the original manufacturer, distributor, or retail seller making express warranties with respect to such goods when new) to maintain sufficient service and repair facilities within this state to carry out the terms of such express warranties." Cal. Civ. Code § 1795.5(a). It further states that "[t]he duration of the implied warranty of merchantability and where present the implied warranty of fitness with respect to used consumer goods sold in this state, where the sale is accompanied by an express warranty, shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable . . . " Cal. Civ.

---

1791.2(a)(1).

[5] The facts of this case are also distinguishable from *Jensen* because the complaint does not allege that Lemke-Vega was issued a full, new car manufacturer's warranty along with the sale. *See Rodriguez*, 77 Cal. App. 5th at 223-34 (discussing *Jensen*, 35 Cal. App. 4th at 119).

7

1   Code § 1795.5(c).

2       "[O]nly distributors or sellers of *used* goods—not manufacturers of *new* goods—have
3   implied warranty obligations in the sale of *used goods*." *Nunez v. FCA US LLC*, 61 Cal. App. 5th
4   385, 399 (2021) (emphasis in original). *See also Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d
5   1168, 1179 (N.D. Cal. 2017) (noting "[t]he plain language of the section clearly only creates
6   obligations on behalf of 'the distributor or retail seller making express warranties with respect to
7   used consumer goods (and *not the original manufacturer . . .* )" and dismissing implied warranty
8   claim on the ground that "the Song-Beverly Act does not create any obligation on behalf of
9   Nissan, the original car manufacturer, with respect to used goods" (emphasis in original)
10  (quotation omitted)). Nonetheless, one court has explained that "the assumption baked into
11  section 1795.5 is that the manufacturer and the distributor/retailer are distinct entities. Where the
12  manufacturer sells directly to the public, however, it takes on the role of a retailer." *Nunez*, 61
13  Cal. App. 5th at 399 (quoting *Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 339
14  (2019)). In *Kiluk*, the manufacturer "partnered with a dealership to sell used vehicles directly to
15  the public by offering an express warranty as part of the sales package," which the court described
16  as "a crucial incentive for buyers." 43 Cal. App. 5th at 340. The court held that "[b]y partnering
17  with the dealership, Mercedes Benz stepped into the role of a retailer and was subject to the
18  obligations of a retailer under section 1795.5." *Id*.

19      The court previously dismissed this claim on the ground that "the complaint does not
20  allege facts to support a reasonable inference that MBUSA 'stepped into the role of a retailer.'"
21  *Lemke-Vega*, 2023 WL 3604318, at *5. The FAC fares no better. Lemke-Vega again alleges that
22  she purchased the subject vehicle and that express warranties by MBUSA accompanied the sale.
23  FAC ¶ 17. But the sales contract is between Lemke-Vega and Mercedes Benz of Walnut Creek,
24  not MBUSA. Moreover, even though the FAC alleges that the vehicle was sold with a "Basic
25  Warranty," a "Federal Emissions Performance/Control Warranty," and a "California Emissions
26  Control Warranty," it does not allege that MBUSA offered these warranties. Lemke-Vega also
27  admits that she does not know if the vehicle was sold as "Certified Pre-Owned." *Id*. at ¶¶ 18, 19.
28  She argues only that "it is more likely than not that MBUSA issued a warranty at the Subject

8

Vehicle's sale and, therefore, stepped into the role of the retailer." Opp'n 10 (citing *Kiluk*, 43 Cal. App. 5th at 340). The court concludes that the FAC lacks sufficient "factual content that allows the court to draw the reasonable inference that" MBUSA was acting as a retailer in connection with the sale of the subject vehicle. *See Iqbal*, 556 U.S. at 678; *Nunez*, 61 Cal. App. 5th at 399 ("plaintiff presented no evidence that defendant was 'a distributor or retail seller of used consumer goods' (§ 1795.5), or in any way acted as such," distinguishing *Kiluk*). As this is Lemke-Vega's second attempt to plead a claim for breach of implied warranty, any further opportunity to amend would be futile. Accordingly, the breach of implied warranty claim is dismissed with prejudice.

### B.     Breach of Express Warranty- California Commercial Code

California Commercial Code section 2313 sets forth the methods by which a seller creates express warranties. In relevant part, it states:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> . . .

Cal. Com. Code § 2313(1)(a), (b). *See* Opp'n 11-12 (clarifying that Lemke-Vega's claim is under subsections (a) and (b)). "A plaintiff pleading a breach of express warranty claim must allege facts that sufficiently show: '(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" *Scott v. Saraya USA, Inc.*, ---F. Supp. 3d---, No. 22-CV-05232-WHO, 2023 WL 3819366 (N.D. Cal. June 5, 2023) (quoting *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 853 (N.D. Cal. 2018)); *Hastings v. Ford Motor Co.*, 495 F. Supp. 3d 919, 924 (S.D. Cal. 2020) (same).

The FAC fails to allege facts to support these elements of the claim. First, it does not allege that MBUSA made "statements constitute[ing] an affirmation of fact or promise or a description of the goods." The FAC alleges that the vehicle "was accompanied by written express

9

warranties as set forth herein," FAC ¶ 55, but it does not identify any such written warranties or include facts about their terms. Nor does it allege that MBUSA issued such warranties. To the extent that the claim is based upon the "Optional Service Contract" set forth in the sales contract, as discussed above the FAC does not allege that MBUSA issued the service contract. The FAC also fails to allege facts about how the warranty was breached, other than generally alleging that the vehicle "suffered [unspecified] defects, malfunctions, and nonconformities covered by the Subject Vehicle's express warranties" and that "Defendant failed to service or repair the Subject Vehicle to conform to the express written warranties . . ." FAC ¶ 56. Accordingly, the FAC fails to state a claim for breach of express warranties under section 2313(1)(a) or (b). Lemke-Vega alleged this claim for the first time in the FAC, and the court cannot say that amendment would be futile. Accordingly, the claim is dismissed with leave to amend.

### C. MMWA Claim

Lemke-Vega also brings a claim under the MMWA based on alleged breaches of express and implied warranties. *See* FAC ¶ 48.

15 U.S.C. § 2310(d) provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." The FAC does not allege that MBUSA violated any particular provision of the MMWA, and the parties agree that Lemke-Vega's MMWA claim "stand[s] or fall[s] with [her] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008); Mot. 12; Opp'n 10-11. As discussed above, the FAC fails to state claims under the Song-Beverly Act or the California Commercial Code. Accordingly, the MMWA claim is dismissed. As with the California Commercial Code claim, Lemke-Vega alleged this claim for the first time in the FAC. Since the court cannot say that amendment would be futile, the dismissal is with leave to amend.

### IV. CONCLUSION

For the foregoing reasons, MBUSA's motion to dismiss is granted. The Song-Beverly Act claims are dismissed with prejudice. The California Commercial Code and MMWA claims are

dismissed with leave to amend.  Lemke-Vega may file a second amended complaint by no later than October 3, 2023 and **shall plead her best case.**

**IT IS SO ORDERED.**

Dated: September 12, 2023



Judge Donna M. Ryu
Chief Magistrate Judge